HARRY G. LAFORGE AND MILDRED E. LAFORGE, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4559–67. Filed October 20, 1969.

*Ralph J. Gregg*, for the petitioners.
*John D. Steele, Jr.*, for the respondent.

IRWIN, *Judge:* Respondent determined deficiencies in petitioners' income taxes for the calendar years 1964 and 1965, in the amounts of $931.28 and $1,044.52, respectively. Petitioner conceded certain issues at trial.

The remaining issues for decision are (1) whether respondent properly disallowed certain club dues and fees claimed by petitioner as entertainment expenses under section 274(a)(1)(B) of the Internal Revenue Code of 1954,[1] and (2) whether out-of-pocket expenses incurred at various Buffalo hospitals where petitioner practiced are deductible under sections 162 and 274 as entertainment expenses.

### FINDINGS OF FACT

The petitioners, husband and wife, timely filed joint Federal income tax returns for the years 1964 and 1965, with the district director of internal revenue at Buffalo, N.Y. At the time the petition was filed, they resided at 957 Delaware Avenue, Buffalo, N.Y.

Mildred E. LaForge is a petitioner only by virtue of having joined with her husband in filing their Federal income tax returns for the years in question. Therefore, "petitioner" will be used herein to refer to Harry G. LaForge.

Petitioner has been a specialist in obstetrics and gynecology since 1937. He is also a clinical professor of obstetrics and gynecology at the Medical School of the State University of New York at Buffalo.

Petitioner has a full schedule consisting of activities in surgery, delivery, office hours, teaching, and administrative work. Approximately 50 percent of his patients are referrals from other physicians. The remaining half are usually recommended to him by other patients.

Petitioner has been a member of the Country Club of Buffalo (hereafter the country club) and of the Buffalo Club for approximately 20 years and 25 years, respectively.

The country club provides swimming, skeet shooting, golf, tennis, and cardrooms. Petitioner's wife is a life member and his children are automatically members until age 21. However, petitioner and his

---

[1] All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

family have not used these recreational facilities during their membership, except upon four or five occasions when petitioner played golf and once or twice when his children used the swimming facilities.

The Buffalo Club is an old and exclusive club which provides similar recreational facilities. It is primarily a men's club, but petitioner's membership includes his wife. There are no children's facilities other than the swimming pool. Mildred E. LaForge has only limited access to the facilities since use by women and children is discouraged. Occasionally, petitioners used the bowling facilities at the Buffalo Club.

The petitioners frequented the country club five times in 1964 and five times in 1965. Upon these occasions petitioner used either the dining room or bar facilities. Of the five visits in 1964, three were for business use,[2] while four out of the five visits in 1965 were for business use.

In 1964, petitioner used the Buffalo Club 6 times, only 1 of which was for business use. Seven out of a total of 15 visits to this club in 1965 were for business use.

The petitioner's claimed business use of both the Buffalo Club and the country club consisted essentially of the following types of entertainment: (1) Buying meals for other doctors who referred patients to petitioner, residents, their wives, and petitioner's secretary; (2) giving a debutante party for the daughter of another doctor; (3) buying drinks for other doctors and patients at the clubs; and (4) having his wife, upon two occasions, entertain the wives of other doctors. Upon the occasions that petitioner took other doctors, their wives, and his secretary to dinner, the atmosphere at the clubs was sedate and quiet. There was no entertainment of any kind such as a floor show nor any other substantial distractions during dinner.

Petitioner is a cash-basis taxpayer. He claimed deductions on this basis so that the deductions in each calendar year reflected charges incurred in December through November but paid by him in January through December.

The petitioner made the following expenditures at the two clubs during the years in question:

| Club | Business [3] | Personal |
| --- | --- | --- |
| Country club, 1964 | $86. 48 | $73. 69 |
| Buffalo Club, 1964 | 22. 74 | 80. 51 |
| Country club, 1965 | 85. 42 | 51. 52 |
| Buffalo Club, 1965 | 308. 36 | 258. 99 |

[2] Petitioner claimed that certain visits to the clubs during the years in question were for business purposes. He deducted, as entertainment expenses, the cost of providing food and drink to his guests during these business-motivated visits. Respondent did not disallow these expenditures for food and drink which petitioner deducted from his gross income. Respondent admits, on brief, that these claimed business visits to the clubs were in fact for business. Thus, the phrase "business use" refers to those occasions that petitioner claimed he used the clubs for business.

[3] Petitioner did not deduct in 1964 any part of the expenditures attributable to himself and his wife because he was not aware that he could presumably deduct these amounts. Petitioner first began to allocate for deduction the expenses attributable to his wife in April 1965. This Court's computation of business expenditures in both years includes the expenses attributable to petitioner's wife.

The petitioner deducted his club dues, including fees and assessments, in full for 1964 and 1965, as follows:

| Club | 1964 | 1965 |
|------|------|------|
| Country club | $750 | $891.65 |
| Buffalo Club | 442 | 453.40 |
| Total | 1,192 | 1,345.05 |

Petitioner regularly received an itemized statement from the clubs which showed charges for club dues, assessments, and chits, showing items of food and drink, for the month in question. Petitioner noted on the statements the date he paid the bill by check. He indicated in writing on the individual tabs for food and drink, or on the itemized statements, and sometimes on both, the name and designation of title of the persons entertained. If the entertainment was purely personal, he indicated this by writing "no deduct" on the tab. If, however, the expenditure was made in entertaining professional associates, he indicated this by writing the word "deduct" on the bills. At the end of each taxable year in question, petitioner totaled the "deduct" expenditures and deducted them from his gross income as entertainment expenses.

The deductions for food and drink were allowed by respondent as business expenses for the years in question. However, respondent, in his notice of deficiency, denied the deductions for club dues and fees.

After performing surgery in the Buffalo General Hospital or in the Children's Hospital, petitioner frequently lunched there with the interns and residents who had been assisting him or helping care for his patients. He frequently purchased lunch for them. Medicine was discussed during these lunches. Petitioner was unable to obtain receipts from the Buffalo General Hospital because it is a hospital rule that no receipts are given, even though petitioner had asked for them. Petitioner did not keep any record whatsoever of these out-of-pocket expenses. He estimated that he spent $10 per week for 42 weeks in 1964 and $10 per week for 43 weeks in 1965, and he deducted the resulting amounts as entertainment expenses.

Respondent denied these deductions.

### OPINION

Petitioner contends that the club dues and fees are deductible in substantial part under section 274(a)(1)(B),[4] as entertainment ex-

---

[4] SEC. 274. DISALLOWANCE OF CERTAIN ENTERTAINMENT, ETC., EXPENSES.

  (a) ENTERTAINMENT, AMUSEMENT, OR RECREATION.—

    (1) IN GENERAL.—No deduction otherwise allowable under this chapter shall be allowed for any item—

    \*      \*      \*      \*      \*      \*      \*

    (B) FACILITY.—With respect to a facility used in connection with an activity referred to in subparagraph (A), unless the taxpayer establishes that the facility was

pense because these clubs were used by him primarily for the furtherance of his business and the expenditures were directly related to the active conduct of his medical practice. He contends that the out-of-pocket expenses for buying lunches for residents and interns are deductible, in full, as directly related to the active conduct of his business, and also as items associated with the active conduct of such business and which immediately followed a substantial and bona fide business discussion. The club dues, petitioner asserts, were substantiated by adequate records.[5] The out-of-pocket expenses were substantiated, according to petitioner, by uncontradicted corroborating testimony.

The deductibility of the various expenses involved herein is essentially a question of fact. *Commissioner* v. *Heininger*, 320 U.S. 467 (1943), and the burden of proof is on petitioner.

The respondent maintains that the petitioner is not entitled to deduct any of the club dues at the Buffalo Club because the facility was not used in 1964 or 1965 primarily for the furtherance of petitioner's trade or business.[6] As to the country club, respondent contends that petitioner has not proven what portion of the expense items at the club was

---

used primarily for the furtherance of the taxpayer's trade or business and that the item was directly related to the active conduct of such trade or business,

and such deduction shall in no event exceed the portion of such item directly related to * * * the active conduct of the taxpayer's trade or business.

(2) SPECIAL RULES.—For purposes of applying paragraph (1)—

(A) Dues or fees to any social * * * club * * * shall be treated as items with respect to facilities.

(B) An activity described in section 212 shall be treated as a trade or business.

[5] SEC. 274. DISALLOWANCE OF CERTAIN ENTERTAINMENT, ETC., EXPENSES.

(d) SUBSTANTIATION REQUIRED.—No deduction shall be allowed—

\* \* \* \* \* \* \*

(2) for any item with respect to an activity which is of a type generally considered to constitute entertainment, * * * or with respect to a facility used in connection with such an activity, * * *

\* \* \* \* \* \* \*

unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating his own statement (A) the amount of such expense or other item, (B) the time and place of the * * * entertainment, * * * or use of the facility, * * * (C) the business purpose of the expense or other item, and (D) the business relationship to the taxpayer of persons entertained, using the facility * * *. The Secretary or his delegate may by regulations provide that some or all of the requirements of the preceding sentence shall not apply in the case of an expense which does not exceed an amount prescribed pursuant to such regulations.

[6] Sec. 1.274–2 [Income Tax Regs.] Disallowance of deductions for certain expenses for entertainment, amusement, or recreation.

(e) *Expenditures with respect to entertainment facilities*—

\* \* \* \* \* \* \*

(4) *Determination of primary use*—(i) *In general.* A facility used in connection with entertainment shall be considered as used primarily for the furtherance of the taxpayer's trade or business only if it is established that the primary use of the facility during the taxable year was for purposes considered ordinary and necessary within the meaning of sections 162 and 212 and the regulations thereunder. All of the facts and circumstances of each case shall be considered in determining the primary use of a facility. Generally, it is the actual use of the facility which establishes the deductibility of expenditures with

"directly related" entertainment,[7] and that all the dues or fees for the country club, in both years, should therefore be disallowed. On brief, respondent claims that, at most, petitioner can deduct 20 percent of the dues in 1964 and 25 percent in 1965.

Respondent further maintains that petitioner has failed to prove that the out-of-pocket expenses incurred by petitioner in buying lunches for residents and interns at the hospitals meet the requirements of section 162 and, furthermore, that they are not substantiated as required by section 274(d).

Section 162 allows as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. Section 274 limits sharply entertainment expense deductions made after 1962 even though they otherwise qualify under section 162.

The respondent admits on brief that petitioner used the country club primarily for the furtherance of his medical practice in both years.

As to the Buffalo Club, respondent, by using the "calendar days of use" test, prescribed by section 1.274–2(e)(4)(iii), Income Tax Regs.,[8] asserts that petitioner has failed to prove that the expenditures were made at this club primarily in furtherance of his business. However, the "more than 50 percent of the total calendar days of use" test is but one test under the regulations, and petitioner is not precluded from otherwise establishing the primary use of the club. Nevertheless, our examination of all of the facts and circumstances

respect to the facility; not its availability for use and not the taxpayer's principal purpose in acquiring the facility. Objective rather than subjective standards will be determinative. If membership entitled the member's entire family to use of a facility, such as a country club, their use will be considered in determining whether business use of the factility exceeds personal use. The factors to be considered include the nature of each use, the *frequency and duration of use for business purposes as compared with other purposes, and the amount of expenditures incurred during use for business compared with amount of expenditures incurred during use of other purposes.* No single standard of comparison, or quantitative measurement, as to the significance of any such factor, however, is necessarily appropriate for all classes or types of facilities. * * * However, a taxpayer shall be deemed to have established that a facility was used primarily for the furtherance of his trade or business if he establishes such primary use in accordance with subdivision * * * (iii) of this subparagraph. Subdivision * * * (iii) of this subparagraph shall not preclude a taxpayer from otherwise establishing the primary use of a facility under the general provisions of this subdivision. [Emphasis supplied.]

  *        *        *        *        *        *        *

(iii) *Entertainment facilities in general.* A taxpayer shall be deemed to have established that—

(a) A facility used in connection with entertainment, such as a * * * country club, golf club or similar social, athletic, or sporting club * * *

  *        *        *        *        *        *        *

was used primarily for the furtherance of his trade or business if he establishes that more than 50 percent of the total calendar days of use of the facility by, or under authority of, the taxpayer during the taxable year were days of business use. * * *

[7] See fn. 4, *supra.*

[8] See fn. 6, *supra.*

attending petitioner's use of the Buffalo Club in 1964, leads to the conclusion, and we hold, that the facility was not used primarily for the furtherance of petitioner's practice.

As stated in the Findings and Fact, petitioner frequented the Buffalo Club six times in 1964, only one of which was for business use. He expended $22.74 on this one occasion for business, compared with $80.51 expended for personal use during this period. Petitioner claims that the use of the Buffalo Club in 1964 was not characteristic of the use he normally made of this club. He claims that the statistics are too meager to suffice as a proper test for determining the business use of the club in 1964. However, it is the actual use of the club which is determinative of this issue, not its availability for use, nor petitioner's principal purpose in joining the club. See sec. 1.274–2(e)(4), Income Tax Regs.

Petitioner also argues that notwithstanding the fact that he is on the cash receipts and disbursements method of accounting, it is the use during the taxable year that controls for purposes of determining primary use. However, it is unnecessary to decide the validity of petitioner's contention since petitioner would not prevail under his own approach in establishing that the Buffalo Club was used primarily in furtherance of his practice in 1964.

Since petitioner has not established that the primary use of the Buffalo Club in 1964 was for purposes considered ordinary and necessary to his medical practice, the dues and assessments totaling $442 for the Buffalo Club in 1964 were properly disallowed.

In 1965, petitioner used the Buffalo Club 6 out of 15 times for the purpose of entertaining professional associates, and a seventh time for the purpose of entertaining a group of debutantes. The debutante party was given in the hope of obtaining the business of a group of likely potential patients. This results in a percentage of 46.7 percent of business use on the "calendar days of use" basis. However, the amount of expenditures incurred for business purposes (here $308.36), as compared with the amount incurred for personal purposes (here $258.99), is another factor to consider in determining whether a facility is used primarily for business purposes. Our examination of these two factors places us in equipoise. Neither factor persuades us that the Buffalo Club was or was not used primarily for business in 1965. Petitioner has not presented us with evidence sufficient to establish his contention that the primary use of the Buffalo Club in 1965 was for business. We conclude, therefore, that none of the dues and fees paid to the Buffalo Club in 1965 is deductible.[9]

---

[9] In determining whether petitioner's primary use of both clubs in 1964 and 1965 was in furtherance of his medical practice, we have included in our computations the portion of the tabs attributable to petitioner's wife. (See fn. 3, *supra*.) Petitioner first deducted his

The primary-use test has been met by petitioner only with respect to the country club for both years in question. However, petitioner must also establish that the expenditures for these club dues and fees were directly related to the active conduct of his medical practice. Furthermore, the amount of the deduction for these club dues and assessments is limited to that portion allotted to the use of the club for "directly related" entertainment.

Petitioner claims that all the entertainment at the country club during both years falls into the category of business meals, which is an exception to section 274(a) and the regulations thereunder. See sec. 274(e)(1) and regulations thereunder.[10]

wife's portion in April 1965. In the past, petitioner had failed to deduct these expenses because he was unaware that they may have been deductible.

Respondent has not seen fit to disallow these amounts, attributable to petitioner's wife, which he deducted in 1965. Nevertheless, for purposes of determining whether the expenses allocable to petitioner's wife were bona fide business expenses, we note that whether an expense allocable to the wife of a taxpayer is deductible depends on whether the expense is ordinary and necessary, and whether the expense of entertaining a taxpayer's business associates is deductible under sec. 274.

Petitioner's wife was usually present when petitioner entertained his professional associates and their wives. It is apparent from the record that petitioner's wife was present during these occasions because the other wives were also present. The expenses allocable to her were, therefore, ordinary and necessary business expenses, and may be used in determining whether petitioner used the clubs primarily for the furtherance of his practice during the years in issue. See Rev. Rul. 63–144, 1963–2 C.B. 129, Q. and A. 26–28 at 134.

As for the expenses attributable to himself, petitioner did not prove what part of his expenses exceeded the amount he would normally spend on himself. See *Richard A. Sutter,* 21 T.C. 170 (1953). Therefore, no portion of the expenses attributable to petitioner is included in the Court's computation of business expenses in 1964 and 1965.

[10] SEC. 274. DISALLOWANCE OF CERTAIN ENTERTAINMENT, ETC., EXPENSES.

(e) SPECIFIC EXCEPTIONS TO APPLICATION OF SUBSECTION (a).—Subsection (a) shall not apply to—

(1) BUSINESS MEALS.—Expenses for food and beverages furnished to any individual under circumstances which (taking into account the surroundings in which furnished, the taxpayer's trade, business, or income-producing activity and the relationship to such trade, business, or activity of the persons to whom the food and beverages are furnished) are of a type generally considered to be conducive to a business discussion.

Sec. 1.274–2 [Income Tax Regs.] Disallowance of deductions for certain expenses for entertainment, amusement, or recreation.

(f) *Specific exceptions to application of this section*—(1) *In general.* The provisions of paragraphs (a) through (e) of this section (imposing limitations on deductions for entertainment expenses) are not applicable in the case of expenditures set forth in subparagraph (2) of this paragraph. Such expenditures are deductible to the extent allowable under chapter 1 of the Code. * * * Expenditures described in subparagraph (2) of this paragraph are subject to the substantiation requirements of section 274(d) to the extent provided in § 1.274–5.

(2) *Exceptions.* The expenditures referred to in subparagraph (1) of this paragraph are set forth in subdivisions (i) through (ix) of this subparagraph.

(i) *Business meals and similar expenditures*—(a) *In general.* Any expenditure for food or beverages furnished to an individual under circumstances of a type generally considered conducive to business discussion (taking into account the surroundings in which furnished, the taxpayer's trade, business, or income-producing activity, and the relationship to such trade, business or activity of the persons to whom the food or beverages are furnished) is not subject to the limitations on allowability of deductions provided for in paragraphs (a) through (e) of this section. There is no requirement that business actually be discussed for this exception to apply.

(b) *Surroundings.* The surroundings in which the food or beverages are furnished must

Section 1.274–2(c)(6),[11] Income Tax Regs., provides that expenditures with respect to a facility shall be considered directly related to the active conduct of a taxpayer's trade or business if the facility is used for the furnishing of food or beverages under circumstances considered conducive to business discussion—a "quiet business meal." However, only those club dues allocable to the furnishing of such quiet business meals will be considered directly related expenditures. There is no requirement that business be actually discussed in order to apply the business-meal exception.

An examination of the surroundings in which the food or beverages were furnished, the petitioner's medical practice, and the relationship of his practice to the persons to whom the food or beverages were furnished, will aid in deciding whether the expenditures fit within the quiet-business-meal exception of section 274(e)(1).

Petitioner testified that the entertainment at the country club was conducted with no distractions. It consisted of meals and beverages in a quiet, sedate place. Medicine was discussed upon these various occasions of entertainment.

There were two instances, however, which cannot be classified as quiet business meals.

In one case, petitioner's wife entertained the wives of three doctors at the country club on November 18, 1965. The petitioner was not even present upon this occasion. Petitioner has not established this instance as an occasion where food and beverages were furnished to individuals under circumstances of a type generally considered conducive to business discussion. Therefore, the club dues allocable to the expenditure of November 18, 1965, were not directly related to the active conduct of petitioner's medical practice under section 1.274–2 (c)(6), Income Tax Regs., nor under any of the other provisions describing directly related entertainment because section 1.274–2

---

be such as would provide an atmosphere where there are no substantial distractions to discussion. * * *

   (c) *Taxpayer's trade or business and relationship of persons entertained.* The taxpayer's trade, business, or income-producing activity and the relationship of the persons to whom the food or beverages are served to such trade, business or activity must be such as will reasonably indicate that the food or beverages were furnished for the primary purpose of furthering the taxpayer's trade or business and did not primarily serve a social or personal purpose. * * *

   [11] Sec. 1.274–2 [Income Tax Regs.] Disallowance of deductions for certain expenses for entertainment, amusement, or recreation.

   (c) *Directly related entertainment*—* * *

   *        *        *        *        *        *        *

   (6) *Club dues, etc., allocable to business meals.* An expenditure shall be considered directly related to the active conduct of the taxpayer's trade or business if it is established that the expenditure was with respect to a facility (as described in paragraph (e) of this section) used by the taxpayer for the furnishing of food or beverages under circumstances described in paragraph (f)(2)(i) of this section (relating to business meals and similar expenditures), to the extent allocable to the furnishing of such food or beverages.

(c) (7) (i),[12] Income Tax Regs., provides that if the taxpayer is not present, expenditures for entertainment are generally not considered directly related entertainment unless the taxpayer clearly establishes to the contrary. Petitioner has not carried his burden of proof with respect to the entertainment expense at the country club on November 18, 1965.

In the second case, on March 6, 1965, petitioner spent the evening at the country club. He testified that he bought drinks for patients and other physicians. One of the chits for that evening is marked "2 Las Vegas," which would seem to indicate that the atmosphere at the club on that night was not the type generally considered conducive to business discussion. Upon cross-examination, petitioner admitted that it was not a quiet business setting on that occasion. Therefore, the $10 business expenditure for that occasion does not qualify within the "quiet business meal" exception.

As for the three business-use occasions at the country club in 1964, and the two remaining business-use occasions there in 1965, petitioner has testified that the atmosphere at the club was quiet, with no substantial distractions to the discussion of medicine in which he and his colleagues engaged. Although uncorroborated, petitioner's testimony was uncontradicted and we have no reason to disbelieve him. Petitioner testified specifically as to the purpose of the entertainment—to discuss business and to maintain the goodwill of his professional associates who refer patients to him and of the residents and interns who care for his patients.

The business-meal rule is an exception to, and not subject to, the requirements of section 274(a), even if the entertainment be considered only goodwill entertainment. See Rev. Rul. 63-144, 1963-2 C.B. 129, Q. and A. 14-20 at 132-133. All three of the business-use occasions of the country club in 1964 were business meals under section 274(e) (1), and, by virtue of section 1.274-2(c) (6), Income Tax Regs., were

---

[12] Sec. 1.274-2 [Income Tax Regs.]. Disallowance of deductions for certain expenses for entertainment, amusement, or recreation.

(c) *Directly related entertainment*—* * *

\* \* \* \* \* \* \*

(7) *Expenditures generally considered not directly related.* Expenditures for entertainment, even if connected with the taxpayer's trade or business, will generally be considered not directly related to the active conduct of the taxpayer's trade or business, if the entertainment occurred under circumstances where there was little or no possibility of engaging in the active conduct of trade or business. The following circumstances will generally be considered circumstances where there was little or no possibility of engaging in the active conduct of a trade or business:

(i) The taxpayer was not present;

\* \* \* \* \* \* \*

An expenditure for entertainment in any such case is considered not to be directly related to the active conduct of the taxpayer's trade or business unless the taxpayer clearly establishes to the contrary.

directly related to the active conduct of petitioner's practice. The total expended for the "quiet business meals" is 53.9 percent of the total expenditures made there during 1964. Therefore, 53.9 percent or $404.25 of the dues and assessments paid in 1964 to the country club is deductible as a directly related expense under section 1.274-2(c)(6), Income Tax Regs.

Only two of the four business-use occasions of the country club in 1965 were "quiet business meals." The total expended for these meals was $65.47, or 47.7 percent of the total entertainment expenditures at the club. Therefore, $425.32 or 47.7 percent of the dues paid in 1965 to the country club is deductible as a directly related entertainment expense under section 1.274-2(c)(6), Income Tax Regs.

Respondent argues that, even assuming the business-use occasions were for "quiet business meals" and thus directly related entertainment under section 1.274-2(c)(6), Income Tax Regs., the cost of entertaining the wives, even if deductible under section 162, should be considered "associated with" entertainment by virtue of section 1.274-2 (d)(4), Income Tax Regs.[13] Therefore, respondent concludes, the club dues and fees, to the extent allocable to the furnishing of food and beverages to the wives, are not deductible.

Contrary to respondent's argument, we hold that section 1.274-2 (d)(4), Income Tax Regs., is inapplicable to section 1.274-2(c)(6). Under section 1.274-2(c)(6) of the regulations, club dues are to be considered directly related to the extent allocable to expenditures made at clubs for a type of entertainment (herein business meals) which is expressly excepted from the application of section 274(a) and the regulations thereunder. To maintain that the expenses allocable to the wives is here only "associated with" entertainment is an attempt to undermine the business-meal rule exception of section 274(e)(1).

If, in light of all the facts and circumstances, the surroundings during business entertainment are of a type generally considered con-

---

[13] Sec. 1.274-2 [Income Tax Regs.]   Disallowance of deductions for certain expenses for entertainment, amusement, or recreation.

(d) *Associated entertainment*— * * *

\*       \*       \*       \*       \*       \*       \*

(4) *Expenses closely connected with directly related entertainment.* If any portion of an expenditure meets the requirements of paragraph (c)(3) of this section (relating to directly related entertainment in general), the remaining portion of the expenditure, if it is otherwise allowable under chapter 1 of the Code, shall be considered associated with the active conduct of the taxpayer's trade or business to the extent allocable to a person or persons closely connected with a person referred to in paragraph (c)(3)(iv) of this section. The spouse of a person referred to in paragraph (c)(3)(iv) of this section will be considered closely connected to such a person for purposes of this subparagraph. Thus, if a taxpayer and his wife entertain a business customer and the customer's wife under circumstances where the entertainment of the customer is considered directly related to the active conduct of the taxpayer's trade or business (within the meaning of paragraph (c)(3) of this section) the portion of the expenditure allocable to both wives will be considered associated with the active conduct of the taxpayer's trade or business under this subparagraph.

ducive to a discussion of business, the expense of so entertaining a taxpayer's business associates, as well as the expense allocable to their wives, if ordinary and necessary under chapter 1 of the Code, is deductible under the business-meal exception of section 74(e)(1). See Rev. Rul. 63–144, 1963–2 C.B. 129, Q. and A. 18–19 at 132, 133.

Respondent does not here claim that the wives' expenses are not ordinary and necessary. We have already determined which of the business-use occasions at the country club in 1964 and 1965, at which the wives were present, qualify as "quiet business meals." Therefore, since the cost of entertaining the wives is deductible under the business-meal rule of section 274(e)(1) and section 1.274–2(f)(2) of the regulations, the club dues and fees are considered directly related to the active conduct of petitioner's practice to the extent allocable to his cost of furnishing food and beverages qualifying as business meals. See Rev. Rul. 63–144, 1963–2 C.B. 129, Q. and A. 14, 18, 19 at 132–133, and 55 at 138.

The second issue for decision involves the out-of-pocket expenses incurred by petitioner in buying lunches for residents and interns who assisted him at the hospitals where he performed surgery.

Respondent claims that such expenses are not ordinary and necessary under section 162, and that, in addition, petitioner failed to meet the substantiation requirements of section 274(d) as to them.

We hold that petitioner has failed to meet the substantiation requirements of section 274(d) and the regulations [14] promulgated thereunder,

---

[14] Sec. 1.274–5. [Income Tax Regs.] Substantiation requirements.

(a) *In general.* No deduction shall be allowed for any expenditure with respect to—

 \*   \*   \*   \*   \*   \*   \*

(2) Any activity which is of a type generally considered to constitute entertainment, \* \* \* or with respect to a facility used in connection with such an activity, including the items specified in section 274(e), \* \* \*

 \*   \*   \*   \*   \*   \*   \*

unless the taxpayer substantiates such expenditure as provided in paragraph (c) of this section. This limitation supersedes with respect to any such expenditure the doctrine of Cohan v. Commissioner (C.C.A. 2d 1930) 39 F. 2d 540. The decision held that, where the evidence indicated a taxpayer incurred deductible travel or entertainment expenses but the exact amount could not be determined, the court should make a close approximation and not disallow the deduction entirely. Section 274(d) contemplates that no deduction shall be allowed a taxpayer for such expenditures on the basis of such approximations or unsupported testimony of the taxpayer. For purposes of this section, the term "entertainment" means entertainment, amusement, or recreation, and use of a facility therefor; \* \* \*

(b) *Elements of an expenditure*—(1) *In general.* Section 274(d) and this section contemplate that no deduction shall be allowed for any expenditure for \* \* \* entertainment \* \* \* unless the taxpayer substantiates the following elements for each such expenditure:

(i) Amount;

(ii) Time and place of \* \* \* entertainment (or use of a facility with respect to entertainment), \* \* \*

(iii) Business purpose; and

(iv) Business relationship to the taxpayer of each person entertained, using an entertainment facility \* \* \*

 \*   \*   \*   \*   \*   \*   \*

(c) *Rules for substantiation*—(1) *In general.* A taxpayer must substantiate each element of an expenditure (described in paragraph (b) of this section) by adequate records

which have been held valid by this Court. *William F. Sanford*, 50 T.C. 823 (1968), affirmed per curiam 412 F. 2d 201 (C.A. 2, 1969).

Although petitioner very conscientiously kept records of his club expenses, he kept no records at all regarding these expenses. He estimated that he spent $2 to $3 per day, and that he was away from the hospital for 10 weeks in 1964 and 9 weeks in 1965. On the basis of these estimates, petitioner deducted $420 in 1964 and $430 in 1965. Although it was impossible to obtain receipts from the Buffalo General Hospital, it appears that petitioner could have made some type of record for himself recording specific information as to these expenses. Petitioner has offered no reason as to why he did not keep such a record for himself.

The cashier at Buffalo General Hospital verified in her testimony that petitioner bought lunches for the residents and interns. The cashier recalled that petitioner spent "something like $2.65" each day, or even $3. However, her corroborating testimony did not set forth the information necessary to substantiate these expenses.

In view of our holding that petitioner failed to meet the overriding requirement of substantiation called for by section 274(d) and the accompanying regulations, it is unnecessary to decide respondent's claim that the expenses were not ordinary and necessary expenses under section 162.

*Decision will be entered under Rule 50*

---

or by sufficient evidence corroborating his own statement except as otherwise provided in this section. Section 274(d) contemplates that a taxpayer will maintain and produce such substantiation as will constitute clear proof of an expenditure for * * * entertainment * * * referred to in section 274. A record of the elements of an expenditure made at or near the time of the expenditure, supported by sufficient documentary evidence, has a high degree of credibility not present with respect to a statement prepared subsequent thereto when generally there is a lack of accurate recall. Thus, the corroborative evidence required to support a statement not made at or near the time of the expenditure must have a high degree of probative value to elevate such statement and evidence to the level of credibility reflected by a record made at or near the time of the expenditure supported by sufficient documentary evidence. The substantiation requirements of section 274(d) are designed to encourage taxpayers to maintain the records, together with documentary evidence, as provided in subparagraph (2) of this paragraph. To obtain a deduction for an expenditure for * * * entertainment, * * * a taxpayer must substantiate, in accordance with the provisions of this paragraph, each element of such an expenditure.

\* \* \* \* \* \* \*

,(3) *Substantiation by other sufficient evidence.* `If a taxpayer fails to establish to the satisfaction of the district director that he has substantially complied with the "adequate records" requirements of subparagraph (2) of this paragraph with respect to an element of an expenditure, then, except as otherwise provided in this paragraph, the taxpayer must establish such element—

(i) By his own statement in writing containing specific information in detail as to such element ; and

(ii) By other corroborative evidence sufficient to establish such element.

If such element is the description of * * * the cost, time, place, or date of an expenditure, the corroborative evidence shall be direct evidence, such as a statement in writing or the oral testimony of persons entertained or other witness setting forth detailed information about such element * * *. If such element is either the business relationship to the taxpayer of persons entertained or the business purpose of an expenditure, the corroborative evidence may be circumstantial evidence.