ARAM A. CHURUKIAN and MARIE D. CHURUKIAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Churukian v. Commissioner
Docket No. 3514-78.
United States Tax Court
T.C. Memo 1980-205; 1980 Tax Ct. Memo LEXIS 378; 40 T.C.M. (CCH) 475; T.C.M. (RIA) 80205; June 18, 1980, Filed Lee B. Stanton, for the petitioners. Robert Cuatto, for the respondent. NIMS
MEMORANDUM FINDINGS OF FACT AND OPINION NIMS, Judge: Respondent determined a deficiency in income tax against the petitioners for the year 1975 in the amount of $4,196. Certain concessions having been made by the parties, the issues remaining for our consideration are (1) whether the Commissioner's determination in the statutory notice of deficiency was arbitrary and excessive, (2) whether petitioners are entitled to a deduction for employee business expenses in the amount claimed, (3) whether petitioners are entitled to a business bad debt deduction in the year 1975, and (4) whether petitioners are entitled to an interest and charitable contribution deduction in the amount claimed. FINDINGS OF FACT
Some of the facts were stipulated. The stipulation of facts together with exhibits attached thereto are incorporated by this reference. Petitioners resided in Glendale, California, at *380 the time of the filing of the petition in this case. Petitioner, Aram A. Churukian (hereafter referred to as "petitioner"), was employed as an insurance agent by the Allstate Insurance Company in 1975 and he sold all types of insurance. Allstate Insurance Company furnished petitioner with an office and set no limit on the time the petitioner was able to work in his office. The insurance company also did not require petitioner to work at home. However, it was sometimes hard to contact petitioner during the day so clients would call him at home. To meet the needs of these clients, petitioner maintained a complete set of files in his home. Petitioner lived in a seven-room house. Petitioner maintained a garden in which he raised vegetables. He rented the land for the garden from a utility company. A portion of the crops was consumed by petitioner and his family; petitioner also gave a portion of the crops away as gifts. During the year 1975 petitioner used his automobile for transportation to call on clients and prospective clients. He drove a total of 13,272 business miles. Petitioner also occasionally entertained clients. Petitioner was in the church choir. He practiced *381 twice a week and performed in the choir on Sundays. Petitioner drove his automobile a total of 2,240 miles back and forth from church in connection with the choir. During the years 1965 and 1966, petitioner made loans to Lynn Hubbard who was another insurance agent. Each of these loans arose in connection with specific insurance policies that were purportedly being written by Hubbard. On many occasions a prospective client cannot afford to pay the premium in one lump sum. Agents sometimes advance money for the premium payments. Since Hubbard claimed that he did not have the funds to make these advances, petitioner loaned the money to Hubbard to finance these advance payments of the premiums. Total loans amounted to $10,000. Hubbard was supposed to repay petitioner as the customers paid the installments and although Hubbard made some repayments, he did not repay the total amount. The last payment of $3,000 was made in either 1970 or 1972. Petitioner believes that the policies were fictitious and that Hubbard used the money himself. In late 1974 petitioner wrote a letter to Hubbard demanding payment. This letter was returned to petitioner by the post office as undeliverable. *382 Petitioner's 1975 income tax return was selected for office audit and a letter was mailed inviting petitioner in for an examination. Petitioner responded by letter dated August 15, 1977 that he preferred a field audit. The Service responded by letter dated August 16, 1977 that a field audit "would not be warranted" and petitioner was asked to contact the Service within ten days. Petitioner failed to respond and a notice of deficiency was issued January 4, 1978 which disallowed petitioner's claimed deductions. Subsequently, petitioner was offered several opportunities for conferences at the Appeals Office level and with District Counsel. Petitioner did not avail himself of these opportunities. After the trial of this case petitioner filed an amended petition in which he claimed additional deductions. The following chart indicates the deductions claimed in the tax return, the deductions claimed in the amended petition and the amounts still in dispute: Claimed Per
Allowed
Claimed
Original
Notice of
Per
Stipulated
Return
Deficiency
Amended
or
Still
4/15/76
6/23/77
Petition
Conceded
Disputed
Schedule A
INTEREST EXPENSE
4,439
0
4,439
2,857
1,582
Dept. Stores Banks
432
0
432
432
Loans (personal)
1,100
0
1,100
1,100
Auto Loans
124
0
124
74
50
Home Mortgage
2,783
0
2,783
2,783
0
CONTRIBUTIONS
Mileage to Church
252
252
Goodwill
577
0
0
0
Total Charitable
Con-
tributions
2,156
0
3,263
3,011
252
MISCELLANEOUS
DEDUCTIONS
Commissions, Fees,
Refunds
987
0
987
Production Business
Gifts
870
0
870
Xmas Cards
& Gifts
790
0
790
Stationery &
Postage
448
0
448
Travel &
Entertainment
2,635
0
1,050
0
1,050
Use of House as
Office
716
0
716
0
716
Bad Debts
2,178
0
2,178
Educational Expense
161
0
243
0
243
Business Auto
Miles
(16,850)
3,011
0
2,418
0
2,418
Optimist Club
661
0
661
Total Miscellaneous
Deduc-
tions
6,523
0
10,361
0
10,361
*383 OPINION
This case, which focuses on business and non-business deductions claimed by petitioner, is primarily a substantiation case. Most of the substantive issues are factual in nature; in most instances the threshhold question is the amount actually expended by petitioner. Petitioner bears the burden of proving that he is entitled to the claimed deductions. Welch v. Helvering,290 U.S. 111 (1933); Rule 142, Tax Court Rules of Practice and Procedure.
Burden of Proof
Petitioner's first argument is procedural in nature. Notwithstanding the above statement of the law regarding the burden of proof, petitioner contends that the burden of proof in this case is on respondent. Petitioner maintains that the presumption of correctness which normally attaches to respondent's determination, Welch v. Helvering,290 U.S. 111, 115 (1933), does not attach in this case because the statutory notice of deficiency was "arbitrary and capricious." Citing Jackson v. Commissioner,73 T.C. 394 (1979), and Weimerskirch v. Commissioner, 596 F. 2d 358 (9th Cir. 1979), rev'g. 67 T.C. 672 (1977), petitioner contends *384 further that respondent's failure to put on any evidence means that respondent has not succeeded in meeting his burden of proof. The purpose of a Tax Court proceeding is to determine a taxpayer's correct tax liability. A trial before the Tax Court is a proceeding de novo; our determination of a taxpayer's liability is based on the merits of the case and not on any previous record developed at the administrative level. Greenberg's Express, Inc. v. Commissioner,62 T.C. 324, 328 (1974). In this context, unless a dispute over the Commissioner's administrative procedures or the propriety of his motives in making the determination sheds light on the ultimate question of an individual's tax liability, resolving such a dispute serves merely to distract the Court from its fundamental mission and is an inefficient allocation of the Court's resources. For these reasons the Court will generally not look behind a notice of deficiency to examine the evidence used or the propriety of the Commissioner's motives or administrative policy in making the determination. Greenberg's Express, Inc. v. Commissioner,62 T.C. at 327. A narrow exception to this rule has *385 been carved out for certain unreported income cases in which we inquire into the factual foundations of a deficiency notice. See Jackson v. Commissioner,73 T.C. at 401; Llorente v. Commissioner,74 T.C. No. 20 (May 13, 1980). But we do so only out of recognition that taxpayers may find it difficult to prove a negative, i.e., that he or she did not receive the income claimed and only in the hope that such an inquiry bears fruit in terms of determining the taxpayer's correct tax liability. Deduction cases are different, however. Taxpayers in a disallowed deduction case are not required to prove a negative; to establish entitlement to a deduction, taxpayers must adduce positive evidence that they meet statutory requisites. New Colonial Ice Co. v. Helvering,292 U.S. 435 (1934). Regardless of when it is appropriate to look behind the notice of deficiency in an income case, see Weimerskirch,supra,Jackson,supra and Llorente,supra, we think that generally it is inappropriate to look behind the notice of deficiency in a deduction case. In this case inquiring into the propriety of the Commissioner's conduct *386 would not shed light on the taxpayer's correct tax liability. We conclude that the normal rules of proof apply and the burden of proof is on the petitioner to prove that he qualifies for these deductions. [1]
*387 Home Office Deduction
The first substantive issue to be decided is whether petitioner may deduct $716 listed under the category of home office expenses. This amount includes an allocable portion of expenses incurred in maintaining petitioner's home as well as an amount purported to be one-half of petitioner's telephone bill. Petitioner lives in a seven-room house. He maintains a complete file at his house to enable him to respond to the many people that call him at night. Petitioner estimated that he used one-seventh of the house for business purposes and he based his home office deduction on 10 per cent of what he claimed was the amount of the general expenses for the house and about one-half of the phone bill.
Appeal in this case lies to the Ninth Circuit. In Gino v. Commissioner,538 F. 2d 833 (9th Cir. 1976), rev'g. 60 T.C. 304 (1973), cert. denied, 429 U.S. 979 (1976), a case we are bound to follow under the Golsen doctrine, [2] the Ninth Circuit set the formula for allocating the expenses of maintaining a space in a residence between business and personal use. The Court held that the allocation must be based on the *388 number of hours per day of actual business use over the number of hours per day during which the room is available for all uses. [3] Even if we assume that the denominator of this fraction should be twenty-four hours, we find that petitioner has not met his burden of proving (1) the portion of his home used for business; (2) the amount of time spent on business matters at home; and (3) the total expenses incurred in operating the home. Petitioner's estimate of the portion of the house used for business was much too vague to be probative; he offered no estimate of the amount of time spent on business matters at home; and petitioner's evidence of total expenses was clearly inadequate. 3a Hence, no deduction is allowable because the record contains insufficient evidence which would permit us even to estimate the allowable deduction. [4]
*389 Christmas Cards and Gifts/Production of Business Gifts
Petitioner has claimed a deduction of $790 for "Christmas Gifts and Cards" and $870 under the category of "Production of Business Gifts." These claimed deductions for gifts are subject to the section 275 [5] substantiation requirements. Section 274(d) and Treas. Reg. § 1.274-5(b)(5) provide that no deduction is allowed for any expense for business gifts unless the taxpayer substantiates the following: cost of the gift to the taxpayer; date of the gift; description of the gift; business purpose: business purpose for, or business benefit derived or expected from, gift; name, title, occupation or other information concerning recipient of gift sufficient to establish business relationship to taxpayer. Under section 274(d) a taxpayer must substantiate every expenditure claimed as a deduction by either "adequate records" or other "sufficient evidence", and any such expenditure not thus substantiated will be disallowed infull. Sanford v. Commissioner, 50 T.C. 823, 828 (1968), *390 aff'd. per curiam 412 F. 2d 201 (2d Cir. 1969), cert. denied 396 U.S. 841 (1969). To substantiate the expenditures by "adequate records," the regulations require taxpayers to maintain an account book or diary in which each element of an expenditute is contemporaneously recorded and to supplement account entries with such documentary evidence as itemized receipts. Treas. Regs. § 1.274-5(c)(2). If a taxpayer does not compile "adequate records," he must establish each element of the expenditure by his own written statement and by other corroborating evidence. Treas. Regs. § 1.274-5(c)(3). The record submitted to substantiate the $790 deduction for "Christmas Cards and Gifts" consisted of a single sheet of partially legible paper listing names and numbers. These numbers total 236. The documentary evidence submitted to substantiate the $870 deduction for "Production of Business Gifts" consisted of a single page that was partially legible and that summarized expenses and listed a number of individuals (sometimes a first name only is listed) and institutions that allegedly received one case or 1/2 case *391 of pickles. Standing alone these records fall far short of meeting section 274 substantiation requirements. Petitioner has attempted to make up for his lack of documentary evidence through his oral testimony. While it is clear from the legislative history that oral testimony, properly corroborated, can play a role in section 274 substantiation cases, La Forge v. Commissioner, 434 F. 2d 370, 372 (2d Cir. 1970), rev'g. 53 T.C. 41 (1969), we need not decide whether the mix of oral and documentary evidence offered by petitioner meets the measure of section 274(d). There is a more fundamental weakness in petitioner's case: petitioner has introduced insufficient evidence, oral or documentary, to establish the amount paid for the gifts. There is no evidence in the record to substantiate petitioner's claim that he paid $790 for "Christmas Cards and Gifts." No prices are listed on the single document he submitted and no oral testimony was offered on the issue of cost. Petitioner's "Christmas Cards and Gifts" deduction must be disallowed in full. The circumstances surrounding the deduction claimed under the heading "Production of Business Gifts" requires *392 a little more explanation but the same result obtains. Petitioner claimed an $870 deduction under this heading in his amended petition. This amount allegedly consisted of petitioner's estimate of the fair market value of homemade pickles, jams and jellies that he gave away plus his fixed costs in growing and producing these items (rent, fertilizer, etc.).In his reply brief petitioner reduced this amount to $596 and, while he did not explain the change, it can be assumed that petitioner is now claiming as a business gift deduction his estimate of the fair market value of the product on the day of the gift. [6]
Initially, we note that petitioner is in error in predicating the amount of this deduction on an estimate of the fair market value of the products. Section 162 provides for deductions of ordinary and necessary business expenses "paid" during the taxable year in carrying on a trade *393 or business. The amount petitioner "paid" for these items is his out-of-pocket costs, not the fair market value of the product, and these costs do not include the value of work done by petitioner and his wife for which no compensation is received. [7]
We consider the summary sheet of expenses to be inadequate proof of petitioner's out-of-pocket costs incurred in raising his crops. Even if it were adequate proof of these expenses, we cannot allocate the expenses to the crops given as gifts without knowing what percentage of crops were used for personal purposes and what percentage were used for the so-called business expenses. This record provides no such evidence. We must disallow the deduction in its entirety. Transportation Expenses & Travel and Entertainment Expenses
Petitioner has claimed a business expense deduction of $2,418 for automobile transportation of 16,850 miles and $1,050 for travel and entertainment expenses. To substantiate these amounts, petitioner submitted a schedule prepared on notebook paper which contains a listing of individuals by date and which also appears to list *394 miles driven and amounts paid for lunch. Petitioner testified that the individuals were customers and potential customers. He also testified that he kept track of expenses on small pads of paper and that he would periodically transfer the entries to a spiral notebook. We totaled the mileage on these sheets and came up with a claimed business mileage figure of 13,272 miles. We also totaled the amounts listed on the bottom of each page under the "lunch" column and came up with a figure of $489.50. Petitioner offered no explanation for the higher figures that he claimed, so we will use our totals as the starting point for our analysis. Transportation expenses that are not incurred in connection with an overnight trip are not subject to section 274(d) substantiation requirements. Based on the record we find that petitioner has adequately established the amount and business nature of the claimed transportation expenses in the amount of $1,988.70 (13,272 miles at 15" per mile) and we find this amount to be deductible. Petitioner does not fare as well with the claimed entertainment expenses because entertainment expenses must be substantiated under section 274(d). The section *395 274(d) requirements for travel and entertainment expenses parallel the section 274(d) requirements for business gifts which we have already discussed. The records do not show the place where the expense was incurred, the business purpose for the expense or the business relationship of the person who was purportedly entertained as required by section 274(d) and Treas. Regs. § 1.274-5(b)(3). Petitioner's attempt to shore up these weaknesses in his records through testimony fall short of the mark. Section 274 and Treas. Regs. § 1.274-5 require that each expenditure be adequately substantiated. Generalized testimony that all his quests were customers or prospective customers does not meet this specificity requirement. Dowell v. United States, 522 F. 2d 708 (5th Cir. 1975), cert. denied, 426 U.S. 920 (1976). Accordingly, petitioner deduction of $1,050 for travel and entertainment expenses will be disallowed in its entirety. [8]
*396 Stationery and Postage
Petitioner claimed a deduction of $448 for stationery and postage. He produced documentary evidence that he expended $180 for stamps and a cancelled check in the amount of $25 for the purchase of paper. We find that petitioner is entitled to a deduction of $205 for this item. [9]
Educational Expense
Petitioner claimed an educational expense of $243 for a Spanish course. He testified that approximately 25 percent of his clients are Spanish speaking and that knowledge of Spanish would thus help him in the business. To substantiate his claim, he presented a summary sheet containing many business expense entries including the following one that allegedly pertained to this expense: Mileage 1152 x 10"
$115
Books & Mag.
108
Misc. Exp.
20
$243
We think it significant that petitioner claimed an education expense deduction of $161 on his return and $263 on his amended petition. The expense figures were definitely altered (although not in a way designed to hide the alteration) and we suspect that the figures probably *397 totaled $161 before the alteration. There was no testimony regarding when or how this document was prepared. Whatever little probative value this summary sheet has, it has none in view of this unexplained alteration. Thus, the only evidence petitioner has to substantiate this claim is his bald testimony. We find that petitioner has not substantiated his education expense deduction. Charitable Contribution
Petitioner claimed a charitable contribution of $175 for incidental expenses plus 2,240 miles of auto travel (40 weeks at 56 miles per week) from his home to the Armenian Church twice a week to practice in the church choir that performed at Sunday services. One of the practices was on Sunday prior to the service. We have no idea what the incidental expenses were so our attention need only be devoted to the $156.80 mileage deduction. Section 170(a) allows as a deduction any charitable contribution the payment of which is made within the taxable year.Although the value of services donated to a charitable organization is not deductible, unreimbursed expenditures made incident to the rendition of services to a charitable organization may qualify as a charitable contribution. *398 Treas. Reg. § 1.170A-1(g). Rev. Proc. 74-24, 1974-2 C.B. 477 sets 7 cents per mile as the standard allowance for automobile mileage driven in connection with rendering free services to charitable organizations. Not every incidental expense incurred by a taxpayer in connection with a charitable activity is deductible. "Expenses incurred in the rendition of services to a qualified charitable organization may, and often do, have a dual character. They may benefit both the charity and the taxpayer." Seed v. Commissioner, 57 T.C. 265, 276 (1971). If the taxpayer or someone other than the charity derives a substantial and direct benefit which is personal, the claim for a charitable contribution will not be allowed.See Seed at 276. In the instant case petitioner's performance in the church choir is a form of religious worship. Religious worship is fundamentally and inherently a personal act. The manner in which a person chooses to manifest his or her religious beliefs during the course of a religious service, whether it be serving as an usher, performing in the choir or sitting quietly in the pew, is largely a matter *399 of personal preference. Any resulting benefit inuring to the church is largely incidental and does not alter the inherently personal nature of an act of religious worship. In this context petitioner's participation in the church is not the type of service to a charitable organization that is contemplated by section 170(a) and Treas. Reg. § 1.170A-1(g). We conclude that petitioner is not entitled to a charitable deduction for mileage driven in connection with his church choir activities. Business Bad Debts
Petitioner claimed a bad debt deduction in the amount of $2,178 for loans made by petitioner to Lynn Hubbard in the years 1965 and 1966. Each of the loans arose in connection with specific insurance policies purportedly written by Lynn Hubbard. On many occasions a prospective client cannot afford to pay the premium in one lump sum. Agents sometimes advance money for the premium payments. Since Hubbard claimed that he did not have the funds to make these advances, petitioner loaned the money to Hubbard to finance these advance payments of the premiums. Total loans amounted to $10,000. Each loan was allegedly recorded on a card and *400 carried as an open book account upon which periodic payments were to be made. Hubbard was supposed to repay petitioner as the customers paid the installments and although he made some repayment, he did not repay the total amount. The last payment of $3,000 was made in either 1970 or 1972. Petitioner believes that the policies were fictitious and that Hubbard used the money himself. Petitioner cites two factors to show that the debt became worthless in 1975: first, he claims that he still had hope of recovery until that time; and second, he asserts that the statute of limitations on collection began to expire in 1975. To substantiate his assertion that he still hoped to recover, petitioner presented a copy of a letter written by him to Hubbard in November, 1974, demanding payment. The letter was undeliverable and shortly thereafter petitioner claims that he gave up hope of ever collecting from Hubbard. Section 166 provides a deduction for a business bad debt in the year the debt becomes wholly worthless. The dispute between the parties focuses on whether the debt became worthless during the year 1975. The question of year of worthlessness is one of fact to be determined *401 from all the facts and circumstances. Of course the burden of proof with respect to this issue rests squarely with the petitioner. Petitioner has established through credible testimony that the loans to Hubbard were intended as short-term loans to be repaid directly out of periodic payments made by individuals who took out insurance policies. We also believe that petitioner attempted to secure payment from Hubbard and that his efforts did not prove completely availing. However, the record does not disclose either the steps taken by petitioner to secure payment, the number of times and the timing of those steps or the dates when Hubbard made payments. In addition there is no evidence regarding Hubbard's financial condition other than petitioner's assertion that Hubbard had no money to pay him. While inability of the debtor to pay the debt is one of the primary indicia of worthlessness, inability to pay is not proven by a mere showing of demand and refusal to pay.It does not necessarily follow from such a showing that the debtor is unable to pay. Runyon v. Commissioner, 8 T.C. 350, 357 (1947). In our opinion this point strikes at the weakness in petitioner's *402 case. While we believe that petitioner entertained some hope or expectation of at least a partial collection up until November, 1974, without evidence of Hubbard's financial condition we cannot say that hope or expectation was reasonable. Moreover, petitioner has pointed to nothing in the 1975 year that can be considered an identifiable event to fix worthlessness. The closest he comes is a statute of limitations argument predicated on the assumption that the last payment was made by Hubbard in 1972 and that these loans constituted open book accounts under California law, Cal. Civ. Proc. Code § 337 (West) which, according to petitioner, means that the four-year statute of limitations under Cal. Civ. Proc. Code § 337 (West) runs from 1972. Even if petitioner is correct in all these assertions, which he clearly is not, [10] that places the expiration date for the statute of limitations in 1976 and not 1975. In light of the foregoing we find that petitioner has failed to establish that the debt became *403 totally worthless in the year 1975 as required under section 166(a)(1). Consequently, we hold that petitioner is not entitled to a bad debt deduction for that year. Interest Expense
The interest expense claimed by petitioner totaled $4,439 of which $1,582 is still in dispute. Petitioner sought to establish that he made $1,000 in interest payments to Leon Chakalozian through two cancelled checks in the amount of $500 and $600 respectively. Petitioner testified he used the proceeds of those loans to lend money to Lynn Hubbard. Petitioner introduced no other probative evidence to establish either that he borrowed substantial sums of money from Leon Chakalozian or that these checks were for the payment of interest. Indeed, the evidence that he did introduce is suspect. One of the checks bears two notations "balance of loan & Int" and "100 & 500 int." On close examination it appears that the phrase "& Int" was added sometime after the phrase "balance of loan" was written. It also seems clear that the notation "100 & 500 int" was added at some other time because it was written in blue ink and not the black ink of the rest of the check. Based on the meager evidence *404 in the record, we find that petitioner has not shown that the monies paid to Chakalozian were deductible interest payments. Petitioner claimed a $432 interest deduction for department store interest payments. At trial he conceded that he had no records of his charge accounts and he stated that he could get none from the department stores. We find that petitioner has failed to substantiate this item. The other disputed item comprising the interest deduction is $50 automobile loan interest. At trial petitioner was uncertain whether he had paid $50 for automobile loan interest over and above the $74 respondent already allowed. He had no documents to substantiate the alleged $50 payment. Accordingly, we find that petitioner's automobile loan interest deduction was $74. Commissions and Finders Fees
Petitioner has claimed a $987 deduction for commissions and finders fees. This allegedly was the amount paid to people such as real estate brokers and accountants for the referral of insurance business to petitioner. The only probative evidence offered by petitioner to substantiate his claim was his testimony that he made the payments, that most of the payments were cash *405 and that it was a common practice in the industry to make such payments. [11] Based on this record, we find that petitioner has not established that he is entitled to a deduction in the amount claimed and that there is insufficient evidence to make an approximation. We disallow this deduction in its entirety. Optimist Club
Petitioner claimed a $661 business deduction for expenses incurred in connection with his membership in the Optimist Club. Petitioner contends that his membership in the Optimist Club was useful and helpful in promoting his business. To substantiate his deduction he submitted documentary *406 evidence that he paid dues of $90 for the year. No records were submitted to substantiate the remaining $571 in claimed deductions which allegedly was the cost of dinners, entertaining, traveling and other similar expenses. We find that petitioner is entitled to a business deduction for the $90 payment of dues. [12] We also find that petitioner has not met his burden of proving that he is entitled to a deduction in excess of that amount. To reflect the foregoing Decision will be entered under Rule 155. Footnotes
1. We note, for the sake of a complete record, that petitioner's complaint about his treatment at the administrative level is without merit. Not only was there nothing inconsistent between the regulations and the Commissioner's determination that petitioner's return should be the subject of an office audit rather than an on-site audit, $601.105(b)(2)(ii), Proced. and Admin. Regs., but petitioner's nonfeasence caused the Commissioner to summarily issue a notice of deficiency disallowing all deductions. On August 16, 1977, the Commissioner mailed a letter to the petitioner soliciting his response within ten days. Petitioner never responded to that letter. His excuse that he was on vacation seems lame since the notice of deficiency was not issued until January, 1978. Where the taxpayer has refused to produce books and records requested by respondent's agents, the taxpayer (and not respondent) will be held accountable for any procedural or evidentiary consequences flowing from such a declination. Durovic v. Commissioner,54 T.C. 1364 (1970), aff'd. in part, rev'd. in part and remanded in part without discussion of this issue, 487 F.2d 36 (7th Cir. 1973), cert. denied, 417 U.S. 919↩ (1974).
2. Golsen v. Commissioner, 54 T.C. 742 (1970), aff'd. without discussion on this point, 445 F. 2d 985↩ (10th Cir. 1971). 3. In Browne v. Commissioner,73 T.C. 723, 728-729↩ (1980), the Tax Court indicated that in circuits other than the Ninth Circuit we would continue to adhere to our original position that the allocation should be based on the number of hours per day of actual business use over the number of hours per day of actual use for all purposes. 3a. To establish total expenses incurred in operating the home, petitioner relied on a somewhat cryptic summary schedule. Even in the best of circumstances, such a schedule has little probative value. Here, there is no evidence as to how or when it was prepared. Moreover, we suspect some of these expenses were paid by check, and without a good explanation as to why the checks were not produced we are reluctant to accord much weight to such secondary evidence. Accordingly, we find petitioner's evidence to be insufficient to establish his expenses, including his alleged business telephone expense which was included in the home office deduction. ↩
4. We need not reach the legal question of whether petitioner qualifies for a home office deduction. See Sharon v. Commissioner,66 T.C. 515 (1976), aff'd. per curiam, 591 F.2d 1273 (9th Cir. 1978), cert. denied, 442 U.S. 941↩ (1979).
5. All section references are to the Internal Revenue Code of 1954, as in effect during the year in issue, except as otherwise expressly indicated.↩
6. Petitioner testified that he usually gave away pickles, some 15 or 16 cases in 1975, and he estimated the value of a jar of pickles to be $3 per jar. Sixteen cases at $3 per jar totals $576 (12 jars in a case) and that may be how petitioner calculated the new amount (with a $20 error).↩
7. See Vartanian v. Commissioner, T.C. Memo. 1977-110↩.
8. Petitioner relies heavily on LaForge v. Commissioner, 434 F. 2d 370 (2d Cir. 1970), rev'g. 53 T.C. 41 (1969), for the proposition that the regulations under section 274 are overly broad. LaForge simply said that the regulation went too far in requiring that a taxpayer establish each element of the expenditure by "his own written statement" if he does not compile "adequate records." The weakness in petitioner's case is not that he did not file a "written statement" but that his evidence, written and testimonial, did not meet statutory requirements. Petitioner also seeks to rely on Lickert v. Commissioner, T.C. Memo. 1964-47. The short answer is Lickert involved the year 1959, a year pre-dating the section 274↩ requirements.
9. Petitioner also introduced a summary sheet of additional paper expenses which we have accorded no weight.↩
10. For example, there are no entries in the documents presented later than 1966. The four-year statute of limitations on open book accounts would therefore expire in 1970.↩
11. Petitioner also offered some documentary evidence to back his claim consisting of a one-page summary list of names and some cancelled checks. The summary list is partially illegible and unintelligible and there was no testimony regarding its preparation. We have accorded it no weight. As to the checks, petitioner admitted on the stand that some of the checks related to expenses other than commissions or finders fees. It is also apparent, judging from the amount of the check and payee, that a number of the other checks did not relate to this deduction either.↩
12. The section 274 rules relating to club dues and club membership do not apply to civic organizations like the optimist Club. S. Rep. No. 1881, 87th Cong., 2d Sess. 33 (1962), 1962-3 C.B. at 739; Rev. Rul. 63-144, 1963-2 C.B. 129, Q&A 56. Thus, dues or other fees paid to such organizations are tested only under the ordinary and necessary standard of section 162↩.