L. G. BISHOP LUMBER AND SUPPLY CO., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent L. G. BISHOP AND PAULINE BISHOP, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
L. G. Bishop Lumber & Supply Co. v. Commissioner
Docket Nos. 5387-69, 5388-69
United States Tax Court
T.C. Memo 1974-70; 1974 Tax Ct. Memo LEXIS 251; 33 T.C.M. (CCH) 336; T.C.M. (RIA) 74070; March 25, 1974, Filed. William R. Bagby, for the petitioners. Frederick W. Krieg, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: [1] Respondent determined the following deficiencies in petitioner L.G. Bishop Lumber and Supply Company's taxable income, and in petitioners L. G. and Pauline Bishop's taxable income, for the indicated taxable years: Petitioner(s)
Taxable Year
Deficiency L.G. Bishop Lumber and Supply Company
1964
$99.25
L. G. and Pauline Bishop
1964
1,857.89
L. G. and Pauline Bishop
1965
8,247.15
L.G. Bishop Lumber and Supply Company
1966
1,962.04
L. G. and Pauline Bishop
1966
6,241.51
The issues remaining for disposition by this Court are as follows: (1) Whether petitioner L. G. Bishop's receipt *253 of real estate properties from L.G. Bishop Lumber and Supply Company (the Bishop Lumber Co.) during 1965 and 1966 constituted distributions taxable as dividends under section 301 of the Internal Revenue Code of 1954; [2]
(2) Whether the Bishop Lumber Co. overstated its depreciation expense deduction for a 1964 Lincoln automobile (the 1964 Lincoln) for the taxable years 1964 and 1966, and whether L. G. Bishop (Bishop) is entitled to deduct any amount as a depreciation expense for the 1964 Lincoln during the taxable years 1964, 1965 and 1966; (3) Whether Bishop is entitled to certain travel expense deductions for the taxable year 1965; and (4) Whether Bishop is entitled to a depreciation expense deduction for seven heifers for the taxable year 1966. FINDINGS OF FACT Some of the facts have been stipulated; the stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Petitioner Bishop Lumber Co. had its principal place of business at Morehead, Kentucky, at the time of the filing of its petition in the instant *254 case. The Bishop Lumber Co. filed Forms 1120 for each of the taxable years 1964 and 1966 with the district director of internal revenue at Louisville, Kentucky. Petitioners L. G. Bishop and Pauline Bishop are husband and wife who resided in Morehead, Kentucky, at the time of the filing of their petition herein. They filed joint Federal income tax returns for the taxable years 1964, 1965 and 1966 with the district director of internal revenue at Louisville, Kentucky. Pauline Bishop is a petitioner herein solely by reason of having filed a joint return with her husband for the years in issue; therefore, references hereinafter to petitioner will refer either to Bishop or to the Bishop Lumber Co.
For the calendar years 1948 through 1966, Bishop owned and operated the Bishop Lumber Co. as an individual proprietorship. The Bishop Lumber Co. was engaged in the business of retail sales of lumber and building materials and supplies. For the taxable years 1948 through 1957, Bishop reported his income from the Bishop Lumber Co. in his individual income tax returns. In 1958, upon advice of his accountant, Bishop properly elected to report the income from the lumber company as a section *255 1361 corporation. For the taxable years in issue, Bishop reported the income from the Bishop Lumber Co. on Form 1120 returns under section 1361, which returns were signed by Bishop as "owner". During the years 1964, 1965 and 1966, Bishop was an officer of, and appraiser for, the Federal Savings and Loan Association in Morehead, Kentucky. Bishop also engaged in the building, farming and cattle businesses, and owned and operated rental property, a restaurant, and a bowling lanes business. For the years 1948 through 1966, Bishop generally maintained only one set of books and only one checking account for all of his many business operations, including the Bishop Lumber Co. operation. [3] This checking account (the Bishop Lumber Co. checking account) has always been maintained in the name of "L.G. Bishop Lumber and Supply" at the Peoples Bank of Morehead, Kentucky. The checks written on the Bishop Lumber Co. checking account were signed by Bishop as "owner". In May 1966 Bishop purchased for his personal usage a farm called the Fleming *256 County Farm. The Fleming County farm was purchased by Bishop for $11,000; the purchase price was paid by Bishop with checks drawn on the Bishop Lumber Co. checking account. The income or loss from the operation of the Fleming County farm in 1966 was reported on Bishop's personal Federal income tax return for 1966. For the years 1965 and 1966, deposits to the checking account from Bishop's personal funds and from his business sources other than the Bishop Lumber Co. totalled $32,629.44 and $48,885.13, respectively. For the years 1965 and 1966, the checks issued on the Bishop Lumber Co. checking account for Bishop's personal and business purposes other than those involving the Bishop Lumber Co. totalled $28,509.06 and $63,900.76, respectively. The latter total included the $11,000 paid for the Fleming County farm in 1966. Bishop's salary for 1965 and 1966 from the Bishop Lumber Co. was $11,000 and $16,000, respectively; however, Bishop did not withdraw his designated salary from the Bishop Lumber Co. in either 1965 or 1966. On July 22, 1964, Bishop purchased and took title for the Bishop Lumber Co. residential lots numbers 17, 18, 19 and 20 in the Green Valley Acres subdivision *257 located in Morehead.Payment for the four lots was made by checks drawn on the Bishop Lumber Co. checking account. The cost of lot number 17 was $3,100. Subsequently, in the latter part of 1964, Bishop decided to use lot number 17 for his personal purposes, and commenced the construction of a house on the lot. Labor and building materials for the house in the amount of $7,050.46 in 1964 and $3,867.46 in 1965 were provided by the Bishop Lumber Co., which amounts were respectively charged in 1964 and 1965 to Bishop in the Bishop Lumber Co.'s accounts receivable books. The $7,050.46 and $3,867.46 were reported as sales in the Bishop Lumber Co.'s 1964 and 1965 corporate returns, respectively. On June 1, 1965, Bishop leased lot number 17 and the appurtenant house, and gave the tenant an option to buy the lot and house. In his Federal income tax return for 1965, Bishop reported rent of $730 and depreciation of $163.77. Since Bishop held lot number 17 and the appurtenant house for sale in the ordinary course of his business subsequent to June 1, 1965, and since he sold the lot and house on March 11, 1966, the gain of $4,145.85 is appropriately characterized as ordinary. During *258 1965 and 1966, Bishop, acting on behalf of the Bishop Lumber Co., purchased land called "The Pearl White farm", for the purpose of making sales of lumber and building materials and of selling houses and lots through the development of residential lots. This land was not operated as a farm when purchased and was recorded by the Bishop Lumber Co. as a business asset in its books and records and its Federal income tax returns. The purchase price was paid by checks drawn on the Bishop Lumber Co. checking account in the respective amounts of $5,250.00 in 1965 and $1,840.50 in 1966. During the taxable year 1966, Bishop withdrew lumber and materials in the amount of $1,249.63 from Bishop Lumber Co. for his personal purposes. For the year 1965, the aggregate of Bishop's personal deposits to the Bishop Lumber Co. checking account and his non-withdrawn salary of $11,000 exceeded his personal withdrawals by check from the Bishop Lumber Co. checking account, as follows: Total personal deposits
$32,629.44
Add: Salary not withdrawn
11,000.00
$43,629.44
Less: Personal checks
28,509.06
Excess
$15,120.38
For the year 1966, the aggregate of Bishop's personal withdrawals *259 by check from the Bishop Lumber Co. checking account and the withdrawal of lumber and materials of $1,249.63, exceeded by $265.26 the aggregate of his personal deposits to the Bishop Lumber Co. checking account and his non-withdrawn salary of $16,000, as follows: Total personal deposits
$48,885.13
Add: Salary not withdrawn
16,000.00
$64,885.13
Less: Personal checks
$63,900.76
Personal withdrawal of lumber & material
1,249.63
65,150.39
Excess
($265.26)
Respondent in his statutory notice dated August 8, 1969, determined that Bishop's acquisition of lot 17 and the Fleming Valley farm constituted distributions of property by Bishop Lumber Co. to Bishop that are taxable to Bishop as dividends for the pertinent years in issue under section 301. In 1965 Bishop expended $476.50 for travel. Bishop in his amended petition claimed that the travel expenses were incurred for business purposes and that he was entitled to a deduction for these expenses. Respondent denied this contention in his answer to the amended petition. The record does not specify the precise nature of the business purpose that allegedly motivated the travel expenses. On July 30, 1966, Bishop *260 purchased seven heifers for $1,156.70 which were used for breeding purposes in 1966 and for which no depreciation was claimed in his 1966 Federal income tax return. Bishop in his amended petition claimed that he was entitled to a depreciation deduction of $68.84 for these heifers for 1966. Respondent denied this contention in his answer to the amended petition. In April 1964 Bishop personally purchased a Lincoln automobile for $6,090.91 and personally retained title in his own name during each of the years in issue. The Bishop Lumber Co. claimed an 85 percent business use of the Lincoln automobile and reported a corresponding depreciation deduction for the Lincoln on its Forms 1120 for each of the years in issue. Respondent in his statutory notice determined that Bishop Lumber Co. was entitled at maximum to a 25 percent deduction for each of the years in issue. ULTIMATE FINDINGS OF FACT The Bishop Lumber Co.'s distributions of lot 17 (with the appurtenant house located thereon) and the Fleming County farm to Bishop were intended as substitutions for the monetary salary which Bishop did not draw in 1965 and 1966, and, thus, did not constitute dividends taxable to Bishop under *261 section 301. OPINION The first issue is whether the Bishop Lumber Co.'s distribution of lot 17 (and the appurtenant house located thereon) and the Fleming County farm to Bishop constituted dividends taxable to Bishop under section 301. Pursuant to the advice of his accountant, Bishop elected in 1958 to have his unincorporated business treated as a domestic corporation for Federal income tax purposes under section 1361. [4]
*262 After carefully examining the record, we are persuaded that Bishop's receipt of the involved properties should not be taxable to him as dividends under section 301. Bishop was the primal force responsible for creating and sustaining the Bishop Lumber Co. Moreover, he treated the Bishop Lumber Co., in effect, as if it were his alter ego. The latter statement is understandable since the Bishop Lumber Co. was an unincorporated entity for all purposes except that of Federal income taxation. We are, therefore, most reluctant to penalize Bishop for the informal and casual methods employed by him in his personal transactions with the Bishop Lumber Co. As this Court has stated in cases dealing with the applicability of the accumulated earnings tax, "A closely held corporation cannot be held to the same strict formalities of large public corporations." Bremerton Sun Publishing Co., 44 T.C. 566, 584-585 (1965); and John P. Scripps Newspapers, 44 T.C. 453, 469 (1965). This principle is conceptually applicable here. We are convinced that Bishop intended that his receipt of lot 17 (with the appurtenant house located thereon) and the Fleming County farm from the *263 Bishop Lumber Co. would operate as substitutions for the monetary salary that he did not draw in either 1965 or 1966. Accordingly, we have found, and so hold, that Bishop's receipt of these properties did not constitute distributions taxable as dividends under section 301. [5]
With respect to the travel expenditure issue, petitioner maintains that he is entitled to a deduction for certain travel expenses incurred in 1965. We disagree.
Section 274(d) provides that traveling *264 expenses incurred for business are not allowable as deductions unless the taxpayer substantiates, either by adequate records or by sufficient evidence corroborating his own statement, the essential elements pertaining to the nature and business of the travel. [6]
*265 Section 1.274-5(c) (2), Income Tax Regs., [7] provides that a diary account book or other similar record in which the taxpayer records the elements of travel expenses while away from home contemporaneously with each expenditure satisfies the adequate records requirements of section 274(d). Further, this regulation provides that entries in a diary or account book of expenditures of less than $25 do not require additional documentary evidence for the purposes of section 274(d), except for any expenditure for lodging while traveling away from home. See section 1.274-5(c) (2) (iii), Income Tax Regs.
*266 In the matter before us petitioner has offered, as substantiation for the travel expenditures claimed, various gasoline, lodging and meal expense receipts. These receipts fail to adequately document the expenses in issue in that they fail to reflect the business purpose for which the purported travel expenses were incurred. See section 1.274-5(c) (2) (ii) (b), Income Tax Regs.
Furthermore, petitioner has not introduced corroborating evidence in his support. Compare LaForge v. Commissioner, 434 F.2d 370 (C.A. 2, 1970), reversing in part and affirming in part 53 T.C. 41 (1969); see also the current version of section 1.274-5(c) (3), Income Tax Regs. Although he has testified that the travel expenses were incurred for business-related reasons, he has not furnished the Court with the specificity required under section 274(d). Accordingly, we hold that Bishop is not entitled to a deduction for the claimed travel expenses for 1965. With respect to the claimed heifer depreciation deduction for 1966, respondent contends that this deduction should be disallowed since petitioner did not produce any evidence *267 pertaining to the useful lives of the animals. We disagree. Section 167 provides, in pertinent part, as follows: SEC. 167. DEPRECIATION. (a) General Rule. - There shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence) - (1) of property used in the trade or business, or (2) of property held for the production of income. After giving due consideration to this matter, we are persuaded that the useful life of the heifers is easily determinable by reference to Rev. Proc. 62-21, C.B. 1962-2, 418, which provides that, for the pertinent year in issue, the useful life for breeding cattle is seven years. Accordingly, we hold that Bishop is entitled to a depreciation deduction for 1966 for his breeding cattle in the amount of $68.84. See Irene F. Bell, 13 T.C. 344, 347-348 (1949); and Cohan v. Commissioner, 39 F.2d 540 (C.A. 2, 1930). Finally, the last issue for disposition pertains to the appropriate amount of the depreciation deduction allowable for the Lincoln during the years in issue. After carefully examining the evidence pertaining *268 to this issue in the record, we have concluded that the Bishop Lumber Co.[8] is entitled to a 25 percent depreciation deduction for the Lincoln during each of the years in issue, and that Bishop is also entitled to a 25 percent depreciation deduction for the Lincoln during each of the years in issue. Decisions will be entered under Rule 155. Footnotes
1. Pursuant to a notice of reassignment sent to petitioners and respondent, and to which no objections were filed, this case was reassigned by the Chief Judge on July 5, 1973 from Judge Austin Hoyt to Judge William M. Fay↩ for disposition. 2. All section references are to the Internal Revenue Code of 1954, unless otherwise specified. ↩
3. It should be noted, however, that Bishop did maintain a separate set of books, and a separate checking account, for the Fleming County Farm. ↩
4. Sec. 1361 provides, in part, as follows: SEC. 1361. UNINCORPORATED BUSINESS ENTERPRISES ELECTING TO BE TAXED AS DOMESTIC CORPORATIONS. * * * (c) Corporate Provisions Applicable. - Under regulations prescribed by the Secretary or his delegate, an unincorporated business enterprise as to which an election has been made under subsection (a), shall be considered a corporation for purposes of this subtitle, except chapter 2 thereof, with respect to operation, distributions, sale of an interest, and any other purpose; and each owner of an interest in such enterprise shall be considered a shareholder thereof in proportion to his interest. Sec. 1.1361-3(a), Income Tax Regs., provides, in part: (a) Subtitle A. (1) Except as otherwise provided in section 1361 and the regulations thereunder, the provisions of subtitle A of the Code shall apply as if the section 1361 corporation were a domestic corporation commencing on the first day of the first taxable year to which the election applies. (2) For purposes of subtitle A of the Code, the proprietor of a section 1361 corporation shall be considered a shareholder thereof owning 100 percent of the stock. * * * Sec. 1.1361-10. Income Tax Regs., provides, in part: Distributions other than in liquidation. (a) General rule. (1) Except as provided in paragraph (b) of this section, all distributions from a section 1361 corporation to an owner of such corporation, with respect to his interest in such corporation, occurring at any time on or after the first day of the first taxable year to which the election applies shall be treated as corporate distributions to a shareholder in accordance with part I of subchapter C. * * * Section 1361↩ was repealed effective January 1, 1969. 5. We recognize that, in 1966, the aggregate of Bishop's personal withdrawals from the Bishop Lumber Co. checking account and his personal usage of lumber supplies and materials owned by the Bishop Lumber Co. exceeded by $265.26 the aggregate of his personal deposits to the Bishop Lumber Co. checking account and his non-withdrawn salary for 1966. However, we have concluded that the $265.26 deficit, which would otherwise have produced dividend consequences, was absorbed and negated by the fact that, for the year 1965, the aggregate of Bishop's personal deposits to the Bishop Lumber Co. and his non-withdrawn 1965 salary exceeded his personal withdrawals from the Bishop Lumber Co. by far more than $265.26. ↩
6. SEC. 274. DISALLOWANCE OF CERTAIN ENTERTAINMENT, ETC. EXPENSES. (d) Substantiation Required. - No deduction shall be allowed - (1) under section 162 or 212 for any traveling expense (including meals and lodging while away from home), (2) for any item with respect to an activity which is of a type generally considered to constitute entertainment, amusement, or recreation, or with respect to a facility used in connection with such an activity, or (3) for any expense for gifts, unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating his own statement (A) the amount of such expense or other item, (B) the time and place of the travel, entertainment, amusement, recreation, or use of the facility, or the date and description of the gift, (C) the business purpose of the expense or other item, and (D) the business relationship to the taxpayer of persons entertained, using the facility, or receiving the gift. The Secretary or his delegate may by regulations provide that some or all of the requirements of the preceding sentence shall not apply in the case of an expense which does not exceed an amount prescribed pursuant to such regulations. ↩
7. Sec. 1.274-5(c) (2). Substantiation by adequate records - (i) In general. To meet the "adequate records" requirements of section 274(d), a taxpayer shall maintain an account book, diary, statement of expense or similar record (as provided in subdivision (ii) of this subparagraph) and documentary evidence (as provided in subdivision (iii) of this subparagraph) which, in combination, are sufficient to establish each element of an expenditure specified in paragraph (b) of this section. It is not necessary to record information in an account book, diary, statement of expense or similar record which duplicates information reflected on a receipt so long as such account book and receipt complement each other in an orderly manner. (ii) Account book, diary, etc. An account book, diary, statement of expense or similar record must be prepared or maintained in such manner that each recording of an element of an expenditure is made at or near the time of the expenditure. (a) Made at or near the time of the expenditure. For purposes of this section, the phrase "made at or near the time of the expenditure" means the elements of an expenditure are recorded at a time when, in relation to the making of an expenditure, the taxpayer has full present knowledge of each element of the expenditure, such as the amount, time, place and business purpose of the expenditure and business relationship to the taxpayer of any person entertained. An expense account statement which is a transcription of an account book, diary, or similar record prepared or maintained in accordance with the provisions of this subdivision shall be considered a record prepared or maintained in the manner prescribed in the preceding sentence if such expense account statement is submitted by an employee to his employer or by an independent contractor to his client or customer in the regular course of good business practice. (b) Substantiation of business purpose. In order to constitute an adequate record of business purpose within the meaning of section 274(d) and this subparagraph, a written statement of business purpose generally is required. However, the degree of substantiation necessary to establish business purpose will vary depending upon the facts and circumstances of each case. Where the business purpose of an expenditure is evident from the surrounding facts and circumstances, a written explanation of such business purpose will not be required. * * * (c) Confidential information. * * * (iii) Documentary evidence. Documentary evidence, such as receipts, paid bills, or similar evidence sufficient to support an expenditure shall be required for - (a) Any expenditure for lodging while traveling away from home, and (b) Any other expenditure of $25 or more, except, for transportation charges, documentary evidence will not be required if not readily available. provided, however, that the Commissioner, in his discretion, may prescribe rules waiving such requirements in circumstances where he determines it is impracticable for such documentary evidence to be required. Ordinarily, documentary evidence will be considered adequate to support an expenditure if it includes sufficient information to establish the amount, date, place, and the essential character of the expenditure. For example, a hotel receipt is sufficient to support expenditures for business travel if it contains the following: name, location, date, and separate amounts for charges such as for lodging, meals, and telephone. Similarly, a restaurant receipt is sufficient to support an expenditure for a business meal if it contains the following: name, and location of the restaurant, the date and amount of the expenditure, and, if a charge is made for an item other than meals and beverages, an indication that such is the case. A document may be indicative of only one (or part of one) element of an expenditure. Thus, a cancelled check, together with a bill from the payee, ordinarily would establish the element of cost. In contrast, a cancelled check drawn payable to a named payee would not by itself support a business expenditure without other evidence showing that the check was used for a certain business purpose. (iv) Retention of documentary evidence. * * * (v) Substantial compliance. * * * ↩
8. Although Bishop personally had title to the Lincoln during each of the years in issue, respondent in his statutory notice dated August 8, 1969, allowed the Bishop Lumber Co. a 25 percent depreciation deduction for each of the years in issue. The potential issue of whether the Bishop Lumber Co. had an appropriate economic interest for purposes of depreciation was not raised either at trial or on brief and is not in issue. ↩