Herman Marom and Diana M. Marom v. Commissioner.
Marom v. Commissioner
Docket No. 5098-69.
United States Tax Court
T.C. Memo 1971-232; 1971 Tax Ct. Memo LEXIS 100; 30 T.C.M. (CCH) 994; T.C.M. (RIA) 71232; September 9, 1971, Filed. Herman Marom, pro se, 35 Knightsbridge Road, Great Neck, N. Y.Fred L. Baker, for the respondent. RAUM
Memorandum Findings of Fact and Opinion RAUM, Judge: The Commissioner determined deficiencies in petitioners' income tax for the calendar years 1965 and 1966 in the amounts of $1,224.66 and $734.16, respectively. At issue is whether he properly disallowed certain deductions claimedt and travel. Petitioners are husband and wife. They filed their 1965 and 1966 joint returns with the district director at Kansas City, Missouri. Their legal residence was in Great Neck, New York, when they filed their petition herein. The husband, Herman Marom, will sometimes hereinafter be referred to as the petitioner. During the tax years petitioner was a commission salesman for National Improvement Corporation, a contractor engaged primarily in home improvement construction. The stock in that corporation was then owned by petitioner's brother. Petitioner acquired some of the stock and became a vice president in a later year. However, during the tax years he was merely an employee, working solely on commissions, without any *102 salary. He received no reimbursement for any expenses incurred by him. He worked in the area of Kansas City, Missouri, within about a 25 to 35 mile radius of that city. The home improvement jobs generally ranged from $1,000 to $12,000, and petitioner's compensation or commission, was a percentage of the amount involved for each job. That commission was paid for petitioner's work in "selling" or persuading the customer to "use our company to do his work." In the course of petitioner's work, he would have several meetings with the prospective customer, make estimates, draw plans, explain bank financing, and discuss such other matters as might be necessary in order to close the deal. Petitioner also dealt with subcontractors - e. g., carpenters, plumbers, "siding people," and the like -, discussing price, the length of time a job would take, the amount of equipment or materials required, and it was his responsibility of "making a price with these [subcontractors."] On the joint returns for 1965 and 1966, petitioner reported receipt of commissions, total expenses relating thereto, and net income from his work as a commission salesman as follows: 1965
1966
Commissions
$15,875.00
$10,900.00
Expenses
7,455.41
6,594.05
Net Income
$ 8,419.59
$ 4,305.95
*103 The foregoing expenses were broken down in eight categories on the returns, and the Commissioner allowed in full the deductions claimed in respect of three of them, namely, auto expense, parking, and use of home as office. However, he disallowed in whole or in part the deductions claimed in respect of the remaining five categories, as follows: 995 1965
Amount
Amount
Amount
Claimed
Allowed
Disallowed
Entertainment of customers
$2,812.30
0
$2,812930
Lunches for customers
460.00
0
460.00
Christmas gifts and gratuities
580.00
0
580.00
Airline business travel
840.00
0
840.00
Hotel and food costs out of town
360.00
0
360.00
Total
$5,052.30
0
$5,052.30
1966
Amount
Amount
Amount
Claimed
Allowed
Disallowed
Entertainment of customers
$2,264.00
0
$2,264.00
Lunches for customers
380.00
0
380.00
Christmas gifts and gratuities
540.00
0
540.00
Airline business travel
730.00
$280.14
449.86
Hotel and food costs out of town
360.00
222.21
137.79
Total
$4,274.00
$502.35
$3,771.65
The disallowance was on two grounds, namely, "that it has not been established that such amounts *104 constitute ordinary and necessary business expenses or meet the substantiation requirements of Section 274 of the Internal Revenue Code of 1954." The parties have filed a stipulation of facts, which together with accompanying exhibits is incorporated herein by reference. The stipulated materials consist largely of cancelled checks drawn by petitioner, payable to the order of certain payees or to cash and endorsed by such payees as follows: (1) "Bagdad"
Payable to cash
Payable to
and endorsed
"Bagdad"
by "Bagdad"
Total
No. of
No. of
No.of
Checks
Amount
Checks
Amount
Checks
Amount
1965
13
$1,040.05
10
$1,186.00
23
$2,226.05
1966
8
629.00
7
1,280.00
15
1,909.00
(The stipulated materials also contain a "statement of account" for 1966 in petitioner's name from the "Bagdad" containing 12 figures in amounts varying from $47.80 to $95.60, one for each month of the year, showing a total of $877.35 for the entire year.) (2) "Colony"
Payable to cash
Payable to
and endorsed
"Colony"
by "Colony"
Total
No. of
No. of
No. of
Checks
Amount
Checks
Amount
Checks
Amount
1965
17
$942.44
21
$820.00
38
$1,762.44
1966
5
224.64
10
440.00
15
664.64
*105 (In respect of the "Colony," the stipulated materials disclose statements of account from the "Colony," together with 8 cancelled checks drawn by petitioner in payment of the charges shown thereon: one check in the amount of $23.81 drawn in 1965 and seven checks in the aggregate amount of $251.47 drawn in 1966.) [1]
(3) "Diners' Club" 1965 - 8 checks payable to "Diners' Club" in the aggregate amount of $1,329.83. (4) "Putsch's Plaza Restaurant" 1965 - 6 checks payable to "Putsch's Plaza Restaurant" in the aggregate amount of $134.89. 1966 - 4 checks payable to "Putsch's" in the aggregate amount of $47.87. (In connection 996 with these checks there are 3 bills from this payee showing charges in the respective amounts of $3.30, $13, and $26.42.) (5) "T.W.A." 1965 - 2 checks payable to "T.W.A." in the respective amounts of $105.06 and $308.28, aggregating $513.34. (6) "Hotel Doral" 1965 - 4 checks payable to "Hotel Doral," in the respective *106 amounts of $50, $42.95, $100, and $53.56, aggregating $246.51. (7) "Playboy Clubs International" 1965 - 1 check payable to "Playboy Clubs International" in the amount of $16.52. 1966 - 2 checks payable to "Playboy Clubs International" in the respective amounts of $5. and $7.19, aggregating $12.19. These checks were in payment of 2 bills showing charges in like amounts. The petitioner was the sole witness at the trial. He presented a sheet containing a list of some 22 persons, most of them subcontractors, suppliers, or persons affiliated in some manner with the building or construction industry; he had compiled the list purportedly from memory after the tax years in issue and he included therein those persons whom he allegedly entertained. The list did not contain any customers. He also presented, over respondent's objection, 12 small (about 3 1/2inch X 6inch) lined pages, obviously taken from a loose-leaf notebook, on which there were fragmentary notes allegedly recording lunch or other expenses incurred in 1966. He testified that the charges recorded in this "diary" were solely for lunches, that it was intended to relate only to the "Lunches for customers" item, and that all *107 expenses recorded therein were paid by cash rather than check. However, not a single person mentioned in the "diary" was either characterized therein as a customer, or identified by him at the trial as a customer; most of them appear on the foregoing list of subcontractors or other persons affiliated with the building or construction industry. It was incumbent on petitioner to establish not only that the alleged expenses qualified for deduction under section 162(a) of the 1954 Code as "ordinary and necessary" business expenses, but also that the rigorous conditions of section 274[2] were satisfied. On this record we cannot find that the Commissioner erred. *108 1. Entertainment of customers. The most substantial item in this case is the one described as "Entertainment of customers." Yet not a single customer was identified, and we were left with the distinct impression on the evidence that none of the cancelled checks or other materials in the record had any relationship to entertainment of customers. True, some of the checks and other materials probably related to some extent to meals taken with some subcontractors or suppliers, and were it not for the rigorous requirements of section 274 we might perhaps have been able to give petitioner some relief [3] in this regard under the principles of Cohan v. Commissioner, 997 39 F. 2d 540, 544 (C.A. 2). But section 274 was plainly intended to do away with the Cohan rule in the case of entertainment expenses. See William E. Sanford, 50 T.C. 823, 827, affirmed 412 F. 2d 201 (C.A. 2), certiorari denied, 396 U.S. 841. *109 Apart from petitioners' failure to establish the right to deductions in the amounts claimed, section 274(d) is a complete bar to any deduction for expenses claimed as "Entertainment of customers." The requirements of these provisions are specific and detailed. The burden was on petitioner to prove by "adequate records" or "by sufficient evidence corroborating his own statement" the various elements set forth therein. There was no attempt here to carry the burden of proof under the "sufficient evidence corroborating his own statement" clause, and therefore LaForge v. Commissioner, 434 F. 2d 370 (C.A. 2), reversing 53 T.C. 41, is not in point. Accordingly, it was incumbent upon petitioner to satisfy the "adequate records" requirement, and this he has failed to do. The cancelled checks and other materials simply do not enable us to form a judgment, without making estimates of the Cohan type, as to which of the expenditures in fact represented bona fide expenses proximately related to the conduct of petitioner's business rather than nondeductible personal expenses. Accordingly, to the extent that deductions might otherwise be allowable under section 162, we *110 cannot find that all the requirements of section 274(d) of the Code or section 1.274-5(b) and (c) of the regulations implementing and interpreting the Code have been met. Nor is petitioner relieved of the requirements of section 274 by reason of regulations section 1.274-5(c)(5) relating to loss of records due to circumstances beyond the taxpayer's control. It is true that petitioner testified that in the course of his moving from Kansas City to New York he lost various papers and records. But the record before us does not establish that any of the missing materials might have satisfied the requirements of section 274. Indeed, the evidence indicates that petitioner's returns had been audited in Kansas City prior to his move to New York, that he had had at least two conferences in Kansas City with a revenue agent, and that no records or materials were presented to the agent other than what was introduced in evidence before us. In the circumstances, this does not appear to be a case for the application of regulations section 1.274-5(c)(5). 2. Lunches for customers. The record is devoid of any convincing evidence that petitioner incurred any expenses in either 1965 or 1966 in respect *111 of this item. He testified that he paid for such lunches by cash. However, the only proof offered by him, in addition to his own vague testimony, was the so-called diary for 1966 which he stated represented "strictly cash disbursements." But not a single person mentioned in those pages was identified as a customer. [4] The Commissioner's determination with respect to this item must be approved. *112 3. Christmas gifts and gratuities. Petitioner's testimony in connection with this item was vague and general. No documentary evidence of any kind was submitted in support of the claimed deductions. Regulations section 1.274-5(b)(5) calls for specific proof of (1) cost of the gift; (2) date of the gift; (3) description of the gift; (4) the business reason for the gift; and (5) occupation of donee or other information identifying him by name, title or other designation sufficient to establish business relationship to the taxpayer. The record before us is woefully deficient in these particulars. [5] We cannot conclude 998 that the Commissioner erred as to this item. *113 4 and 5. Airline business travel and Hotel and food costs out of town. Petitioner testified that he would go to New York twice a year to visit "home shows" at which new products were shown, such as bathroom fixtures, "gadgets for playrooms," and the like. He felt that it would be advantageous to him to know the latest "goings on" in the industry so that he could more readily sell the so-called home improvements in his business. While it is true that petitioner had a brother and sister who lived in the New York area and that these trips may have been motivated in part by personal considerations, we are reasonably satisfied that these two trips a year to New York may fairly be classified as business trips, [6] and that both the travel and hotel and food costs incurred by him were deductible under section 162. Indeed, the Commissioner allowed petitioner deductions for travel in the amount of $280.14 and for hotel and food costs in the amount of $222.21 for 1966. *114 The difficulty with petitioner's position here is that he has been unable to satisfy the substantiation requirements of section 274(d). Certainly, as to 1966, petitioner has failed to prove that he is entitled to any deduction in this respect in excess of that allowed by the Commissioner. The situation is somewhat different as to 1965, for we have in evidence two cancelled checks payable to T.W.A. and four cancelled checks payable to Hotel Doral. But these two sets of checks do not correlate with one another: The T.W.A. checks are dated September 9 and December 26, 1965, whereas the Hotel Doral checks are date March 8, April 5, July 5, and August 1, 1965. We have no way of knowing which, if any, of these checks related to petitioner's trips to New York to visit the "home shows." The substantiation requirements of section 274(d) are severe, and state that no deduction shall be allowed unless the taxpayer substantiates by "adequate records" or by "sufficient evidence" corroborating his own statement "(A) the amount of such expense or other item, (B) the time and place of the travel * * *." (Emphasis supplied.) Thus, on the record before us we have no way of knowing when the "home shows" *115 were held in New York, or whether the cancelled checks have any relationship to those trips. Also, we note that one of the T.W.A. checks was in an amount almost three times the amount of the other, thus raising a serious question about the reliability of these checks as evidence of business trips to New York. Nothing about these checks identifies them as payments for travel to New York, and certainly nothing about them establishes that they were for travel to New York for the purpose of visting the home shows. If we were free to apply the Cohan rule, we would approve a deduction in respect of two trips to New York; but the Cohan rule is no longer applicable to such situations governed by section 274(d). The four checks payable to the Doral Hotel stand on no firmer ground. They are not correlated in any way with the "home shows." Moreover, two of them, in the rounded amounts of $50 and $100, suggest that petitioner merely cashed checks at the hotel, and that these checks did not represent the payment of any hotel bills. No hotel bills of any kind were presented in evidence. There has been a failure of proof. Decision will be entered for the respondent. 999 Footnotes
1. Included in the 7 checks drawn in 1966 is one in the amount of $50.65 bearing the date of January 10, 1965, which obviously was intended to be January 10, 1966. It was negotiated by the payee about January 12, 1966.↩
2. Section 274(d) provides as follows in respect of substantiation of such expenses: SEC. 274. DISALLOWANCE OF CERTAIN ENTERTAINMENT, ETC., EXPENSES. * * * (d) Substantiation Required. - No deduction shall be allowed - (1) under section 162 or 212 for any traveling expense (including meals and lodging while away from home). (2) for any item with respect to an activity which is of a type generally considered to constitute entertainment, amusement, or recreation, or with respect to a facility used in connection with such an activity, or (3) for any expense for gifts, unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating his own statement (A) the amount of such expense or other item, (B) the time and place of the travel, entertainment, amusement, recreation, or use of the facility, or the date and description of the gift, (C) the business purpose of the expense or other item, and (D) the business relationship to the taxpayer of persons entertained, using the facility, or receiving the gift. The Secretary or his delegate may by regulations provide that some or all of the requirements of the preceding sentence shall not apply in the case of an expense which does not exceed an amount prescribed pursuant to such regulations.↩
3. Not only was there a failure to tie these cancelled checks and other materials into specific expenditures that were proximately related to petitioner's trade or business, but many of the checks are suspect. A number of them are made out to cash in rounded amounts - some of them in the amounts of $300 and $200, and a number of them in the amounts of $50 and $25. These certainly do not establish the payment of business expenses. And even those made payable to some of the payees are likewise suspect, for some of those checks were made out in rounded amounts which suggest that petitioner was merely cashing checks at the restaurants involved. In such circumstances we would not be justified in treating those checks as representing business expenses in the absence of other more satisfying evidence. Moreover, not every entertainment expense actually incurred qualifies as an "ordinary and necessary" business expense, and many of the checks may well have represented personal expenditures by petitioner or merely social entertaining. Cf. Ralph E. Larrabee, 33 T.C. 838, 843; Challenge Manufacturing Co; 37 T.C. 650, 659-660. Finally, even to the extent that some of the checks may have represented bona fide business entertainment a portion of the claimed expenses undoubtedly included the cost of petitioner's meals, and under RichardA. Sutter, 21 T.C. 170, at least a portion of the cost of such meals would not be deductible. Although the Internal Revenue Service has ruled that it will apply the Sutter doctrine only in "abuse" cases (Rev. Rul. 63-144, 1963-2 C.B. 129↩, 135), respondent has represented to this Court that he regards this as an "abuse" case, and we cannot say that he is wrong in this respect. Only after taking all of the foregoing considerations into account would we be able to apply the Cohan rule and make an estimate of the amount of deductible expenses.
4. We are of course aware that, pursuant to Regulations section 1.274-5(c)(2)(i), (ii), and (iii)(b), the "adequate records" requirement may be satisfied in the case of expenditures of less than $25 by contemporaneous entries in a diary, unaccompanied by receipts and the like. However, the regulations make clear that in such circumstances the diary itself must record the requisite elements of the expenditure. Accordingly, even though a number of the entries in the 1966 "diary" relate to alleged expenditures of less than $25, we do not find that all the required elements were set forth therein. Therefore, even if we ignore the fact that the 1966 "diary" does not appear to contain any entries dealing with "customers," it cannot by itself support any deduction for alleged cash expenditures under $25.↩
5. In addition, the record is entirely silent as to the applicability of the detailed limitations in section 274(b) of the Code in respect of deductions for gifts. These provisions read in part: SEC. 274. DISALLOWANCE OF CERTAIN ENTERTAINMENT, ETC., EXPENSES. * * * (b) Gifts. - (1) Limitation. - No deduction shall be allowed under section 162 or section 212 for any expense for gifts made directly or indirectly to any individual to the extent that such expense, when added to prior expenses of the taxpayer for gifts made to such individual during the same taxable year, exceeds $25. For purposes of this section, the term "gift" means any item excludable from gross income of the recipient under section 102 which is not excludable from his gross income under any other provision of this chapter, but such term does not include - (A) an item having a cost to the taxpayer not in excess of $4.00 on which the name of the taxpayer is clearly and permanently imprinted and which is one of a number of identical items distributed generally by the taxpayer, (B) a sign, display rack, or other promotional material to be used on the business premises of the recipient, or (C) an item of tangible personal property having a cost to the taxpayer not in excess of $100 which is awarded to an employee by reason of length of service or for safety achievement.↩
6. He later testified that he made more than two trips a year to New York. The discrepancy was unexplained; perhaps the additional trips, if any, were personal in nature. In any event, we find that he made only two trips a year to visit the "home shows."↩